Gaston, J.
 

 This bill was filed in April, 1837, and therein it is charged by the plaintiffs, that in the month of November, 1834, the defendant, a constable of the county of Richmond, had in his hands executions against their property in favour of Smith & McNair, for the sum, as he stated, of about $525; that the plaintiffs, being very much pressed to raise the money to meet these urgent claims, borrowed of the defendant the said sum upon an agreement to pledge for the
 
 *398
 
 re-payment thereof a negro slave Isaac, then of much larger va^ueJ that} hi execution of this agreement, they executed to him a bill of sale, and the defendent executed unto them a bon(j, or other instrument in writing in nature of a defeasance; that the defendant represented to them that it was necessary he should keep both the writings, and they, being women wholly ignorant of law and fully confiding in this representation, permitted him to retain both; that they have since repeatedly offered to repay to him the sum so advanced by him and claimed to redeem the negro, but he hath rejected their offers and most unconscientiously suppresses the defeasance, and claims the negro Isaac as his absolute property. The prayer of the bill is to be let in to redeem the negro on the foot of the mortgage.
 

 The defendant, by his answer, avers, that he purchased the negro Isaac from the plaintiffs, out and out, for the sum of five hundred and twenty-five dollars, which he declares was the full value of the slave at that time; that, in pursuance of this contract, they executed to him an absolute bill of sale, which he has ready to produce; and that there never was any understanding or agreement whatever between him and the plaintiffs in relation to a loan of money or a mortgage of the negro, or a privilege of redemption upon repayment of the price. He declares that he had. in his hands, as an officer, six executions on justices’ judgments, in favor of Smith and McNair, amounting to the sum of $770; that he did not levy these executions, but simply informed the plaintiffs that die would have to collect them, unless the plaintiffs made some arrangement with Smith
 
 &
 
 McNair; that thereupon they proposed to sell to him the negro Isaac, but he and they did not then agree about the price; that shortly afterwards, he called on the plaintiffs to communicate to them instructions, which he had received from Smith & McNair, not to press the collection of these executions until further orders; that the plaintiffs represented, they would be obliged to sell the negro Isaac, and urged upon him to buy; that they first asked $575, then
 
 $550,
 
 and finally agreed to take $525, which defendant consented to give, if Smith' & McNair would wait with him for the money until he could sell
 
 *399
 
 bis cotton; and thereupon it was arranged that the plaintiffs should call at his house the next day to complete the contract. The defendant says that this was done accordingly) and the bill of sale executed without one word having been uttered, then or before, in relation to a mortgage or loan of money; that upon the delivery of the bill of sale, no money was paid the plaintiffs, or security given them for the payment of any money, it being the understanding of the parties that payment was to be made by applying the sum of $525 towards the satisfaction of Smith &. McNair’s executions; that the following week the plaintiffs informed him that they had been advised by Smith & McNair that they ought to have some security for the payment of the purchase money, lest he might die in the mean time and they lose the value of their negro; that thereupon he executed a note to them for $525, dated the 5th December, 1834, and attested by Angus Mclnnis, which note he delivered to them, and which was kept by them until about the 1st of February following, when he paid Smith &. McNair the $525, applied the same as a credit upon the executions in his hands, received back from the plaintiffs his promisory note aforesaid, and delivered the only remaining unsatisfied execution to Smith & McNair, who placed it in the hands of another officer, John C. Knight, by whom the balance due thereon, about 40 or 60 dollars, was collected from the plaintiffs. The defendant avers that he never executed unto the plaintiffs any bond or writing of any kind in the nature of a defeasance, and., this note, so attested by Angus Mclnnis, was the only writing made by him to the plaintiffs, and this writing he has now in his hands, ready to produce. The defendant avers that soon afterwards, the value of negroes began to rise in the market, and continued to do so during the years 1835 and 1836; that during all this time complainants set up no pretence of a right to redeem, or made any offer to redeem, until the fall of 1836, when they for the first time asked him,
 
 as a favor,
 
 to take from them $500 in South Carolina bills, sent them by their mother, and their own note for $25, and let them have the negro back; and that this occurred in the presence of a witness, and not afreten ce was set up of any
 
 *400
 
 right on their part to
 
 redeem.
 
 There is a general replication the answer.
 

 Upon the proofs we. hold that the plaintiffs have estab]is¡ie¿ that the slave Isaac was pledged to the defendant, as a security for the re-payment of the sum
 
 of five hundred and
 
 twenty-five dollars, agreed to be advanced, and shortly thereafter advanced for them, by the defendant. In thefirst place, it is clearly proved by two witnesses, whose credit is not attempted to be impeached, that after the execution of the bill of sale and for the purpose of explaining the agreement of the parties, upon which the bill of sale was given, a defeasance, or instrument in nature of a defeasance, was executed by the defendant Angus Mclnnis, whc has been twice examined, testifies positively, that at the defen 'ant’s request he went with the defendant to the house of thev,plaintiffs to attest an instrument, about to be given, in order to show that they had a right to redeem the boy Isaac; that when they got to the house, defendant produced the instrument and read' it; that the contents thereof the witness cannot recite,, but “that there was something mentioned therein of giving the complainants the right to redeem the boy whenever they paid the defendant the money;” that defendant executed the instrument and at his request the witness attested it: but that witness is ignorant what afterwards became of the instrument. Upon his cross-examination (on one of the occasions upon which his deposition was taken) he admits that, to the best of his recollection, he never attested but one instrument in relation to the dealings between these parties. Elizabeth Mclnnis is exquallypositive in stating,that, sometime after the bill of sale had been given, the plaintiffs requested the defendant to give them some instrument of writing to show their right to redeem the boy, and defendant agreed to give it;, that this was put off from time to time under'various excuses, but finally he did write one, which he read to the plaintiffs, and got Angus Mclnnis to attest it. This witness adds, that, upon one of the plaintiffs’ stating that they ought to have possession of said writing, the defendant replied “that they would get
 
 all
 
 the papers together,” and put this writing in his pocket-book and walked away with it.
 

 
 *401
 
 The defendant avers that the writing thus executed, and
 
 thus attested,
 
 was not of the character of a defeasance, but was merely a note for the payment of the $525; that he took up the note when he paid the money and has it ready to be produced. But he does not produce it; he keeps it back. The inference is irresistible, that he keeps it back, because it is of the character, which the witnesses assign to it. In the next place his answer is shewn in other respects to be undeserving of credit. He declares that the amountof the claims of Smith & McNair in his hands was about $770-and yet adds that after he had paid in part satisfaction of them $525, the resi lue, about $40 dr $60, was afterwards collected for Smith & McNair by John C. Knight. Besides, he has examined McNair in order to prove the payment to the firm of the sum of $525, and he states that the whole amount of the claims in defendant’s hands was between $550 and six hundred dollars. He alsodeclares in his answer that no offer was ever made to redeem the boy, nor pretence of right to redeem him set up, until the fall of 1836, when the plaintiffs asked as a favor to be permitted to return the money and take back the boy. Now, Mr. Leake proves that, shortly after defendant got the boy, the plaintiffs applied to him to help them with a loan of money in order to redeem the boy; and witness-agreed to do so, upon being secured; and adds that at this stage of the conversation the defendant came by, and was
 
 called up,
 
 when witness pulled out his pocket-book and offered to pay him the amount, for which plaintiffs alleged that the negro was pledged; and the defendant then refused to receive the money, alleging that he had bought the negro.Mclnnis proves the tender'of $525 made by Sarah Bethune,one of the plaintiffs, in the fall of 1835 or 1836, in his presence, and a refusal of the defendant to receive it — and adds that in the month of January, preceding, that is to say, either January, 1835, or January 1836, he, at the request of the' plaintiffs offered to pay the defendant the $525, and “take his-bargain,” to which the defendant replied that “he would not give his bargain to any man, but if the plaintiffs would come with the money themselves, they might get him at any time.” j The latter part of this witnesses’ testimony is confirm
 
 *402
 
 ed by Mr. Covington, who states “that in the spring after Terry got the boy,” (which fixes the time spoken of by the former witness to be January, 1835, and not January, 1836j jle¡ having heard that Mclnnis had been to the defendant with the principal and interest to redeem the boy, observed to defendant, “you did not give up your negro:” the defend-said, “No, I give up my bargain to no man,” but added, “whenever
 
 they
 
 will bring me money of their own, I will give up the boy; the work oí the boy is good for the interest of the money.” Besides all these, two witnesses, Elizabeth Mclnnis and Malcolm B. McNair testify, that the actual agreement betwen the parties was distinct and positive, that the plaintiffs were to mortgage the boy Isaac, as a security for the repayment of the sum of $525 to be loaned to or advanced for them by the defendant — and that, afterwards, when, in alleged execution of this agreement, he procured from them a bill of sale, it was done under an explicit assurance that they might have the boy back at
 
 any time
 
 upon refunding the money, and one of them adds, that upon the plaintiffs stating that it might be a considerable time before they could raise the money, the defendant replied, “no matter how long, it would be all the better for him, as he would have the use of the negro, until the money was tendered.” The plaintiffs are entitled to redeem upon paying any balance that may be due from them, because of principal and interest of the money advanced, after the deduction of the reasonable hire of the negro, since he came to the possession of the defendant. And to ascertain whether there be any such balance, and if so, what it is, the ordinary accounts are directed to be taken.
 

 Per Curiam, Decree accordingly.